IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | | |
|---|---|---|---|
| JESSICA ROSE OTT, | ) | | |
| | ) | | |
| Petitioner/Defendant, | ) | No. | CV 20-4056LTS |
| | ) | No. | CR 19-4021LTS |
| vs. | ) | | |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent/Plaintiff. | ) | | |

**GOVERNMENT'S RESPONSE AND MEMORANDUM IN SUPPORT OF
GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION UNDER
28 U.S.C. § 2255**

**Table of Contents**

Page

I. INTRODUCTION ................................................................................................ 2

II. BACKGROUND AND PROCEDURAL HISTORY ........................................... 2

III. ARGUMENT ........................................................................................................ 3

    A. Standards for Relief Pursuant to § 2255 .................................................. 3

    B. Due Process ............................................................................................. 4

    C. Ineffective Assistance of Counsel ........................................................... 5

IV. MOVANT IS NOT ENTITLED TO AN EVIDENTIARY HEARING .............. 18

V. CONCLUSION ................................................................................................... 19

## I. INTRODUCTION

Petitioner (hereafter "movant") argues her attorney was ineffective because (1) he never presented evidence of her innocence; (2) he never presented, requested, or reviewed discovery; (3) he insisted she plead guilty; (4) urged her to perjure herself in front of the magistrate judge; and (4) never explained the penalties associated with her guilty plea. She also claims actual innoncence, claiming she was coererced and never had possession of the firearm. Respondent, United States of America, respectfully submits the following response and memorandum in support of its resistance to movant's motion under Title 28, United States Code, Section 2255. (CvD 1).[1]

## II. BACKGROUND AND PROCEDURAL HISTORY

On July 23, 2019, movant pled guilty to Count 1 and Count 4 of a four-count superseding indictment. Count 1 charged movant with conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 860. Count 4 charged movant with use of a firearm during and in relation to a drug trafficking crime and a crime of violence, in violation of 18 U.S.C. § 2 and 18

---

[1] The following abbreviations will be used throughout this Memorandum: 1) "CrD" refers to movant's criminal docket and is followed by a docket entry number; 2) "CvD" refers to movant's civil docket and is followed by a docket entry number; 3) "PSR" refers to the Presentence Investigation Report and is followed by a paragraph number; 4) "PTR" refers to the plea hearing transcript at CrD 226 and is followed by a page number, and 5) "AF" refers to the affidavit of Joshua Weir found at CvD 4, and is followed by a paragraph number.

U.S.C. § 924(c)(1)(A). (PSR ¶ 1; CrD 85). On December 5, 2019, movant was sentenced to 60 months' imprisonment for Count 1, and 120 months' imprisonment for Count 4 to run consecutively and judgment was entered on December 6, 2019. (CrD 140, 142). No appeal was filed.

### III. ARGUMENT

Movant's § 2255 action is based upon ineffective assistance of counsel and violations of her due process rights. The United States resists these claims.

#### A. Standards for Relief Pursuant to § 2255

The general standards of relief pursuant to Section 2255 puts a high burden on movant. Section 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In order for a movant to prevail on a § 2255 motion, the movant must show evidence of a violation of the Constitution or the laws of the United States. See *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003). Errors that could have been raised at trial or on direct appeal are procedurally barred and cannot be argued through a § 2255 motion absent a showing of cause and prejudice, see *United States v. Frady*, 456 U.S. 152, 167-68 (1982) or absent evidence that the

3

alleged errors were fundamental defects resulting in a complete miscarriage of justice.  See *United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988).  To obtain collateral review of a procedurally defaulted issue, movant must show "either cause and actual prejudice, or that he is actually innocent."  See *Bousley v. United States*, 523 U.S. 614, 622 (1998).  Regardless of whether the district court's decision grants or denies the relief requested in the § 2255 motion, the Eighth Circuit Court of Appeals will review the district court's decision *de novo*.  See *United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004).  Underlying fact-findings are reviewed for clear error.  See *United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006).

**B.     Due Process**

Movant claims the government "pre-planned" to prevent defense counsel from practicing "loyal, constent (sic), focused assistance of counsel" via an alleged contract, and the government had a duty to make this known to the court.  (CvD 1, p. 2).  Movant claims defense counsel never intended to properly represent her.  (CvD 1, p. 2).  Movant also claims there was a conflict of interest contained in the plea agreement which was never made known to her and she never signed a plea agreement, rather only a letter.  (CvD 1, p. 8).  Movant also claims the government "mislead the courts" about her involvement of the crimes contained in the indictment.  (CvD 1, p. 3).  Finally, movant claims her plea was not voluntary.  (CvD 1, p. 8).

4

These claims of movant are procedurally barred because she did not raise these issues on direct appeal.

> In order to obtain collateral review on a procedurally defaulted claim, a habeas petitioner must show either that there was cause for his procedural default and actual prejudice, or that he is actually innocent of the crime for which he was convicted.

*Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

In this case, movant has not shown cause for her failure to raise these challenges on appeal. In addition, movant has not demonstrated actual prejudice.

Even if this Court would find movant's claim is not procedurally barred, it fails on the merits. Movant offers no evidence in support of these claims, rather makes general statements. These claims are not supported by the record; therefore, they fail.

### C. Ineffective Assistance of Counsel

Movant alleges several claims of ineffective assistance of counsel.

To prove ineffective assistance of counsel, defendant must show (1) her counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

When evaluating a counselor's performance under the first prong of this test, courts "operate on the 'strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" *United States v. Taylor,* 258

5

F.3d 815, 818 *(*8th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

In addition, it is well-settled that defense trial counsel's strategic decisions are "virtually unchallengeable unless they are based on deficient investigation, in which case the presumption of sound trial strategy founders on the rocks of ignorance." *Forsyth v. Ault*, 537 F.3d 887, 892 (8th Cir. 2008) (internal alteration, citation, and quotation, omitted); *see also Winters v. United States*, 716 F.3d 1098, 1105-06 (8th Cir. 2013) (observing in cases where the evidence is strong "determining what defenses to pursue, particularly when the choices may be mutually inconsistent or even in conflict, is the type of trial strategy decision that is 'virtually unchallengeable.'" (quoting *Strickland*, 466 U.S. at 690)); *Bowman v. Gammon*, 85 F.3d 1339, 13-46 (8th Cir. 1996)) ("Under *Strickland*, there is a strong presumption that an attorney's performance is professionally reasonable. Moreover, *Strickland* holds that decisions related to trial strategy are virtually unchallengeable." (quoting *Strickland*, 466 U.S. at 689-90)).

Courts also "do not evaluate counsel's performance using the clarity of hindsight, but in light of the facts and circumstances at the time of trial." *Toledo v. United States*, 581 F.3d 678, 681 (8th Cir. 2009) (internal citation and quotation omitted); *see also Evans*, 371 F.3d at 445 ("[W]e have frequently recognized that the strategic and tactical decisions made by counsel, though they may appear unwise in hindsight, cannot serve as the basis for an ineffective-assistance claim under *Strickland*.").

6

A movant also faces an uphill battle proving prejudice under the second prong of the test for ineffective assistance of counsel. Mere speculation does not establish prejudice, instead, a movant must demonstrate that counsel's incompetent acts "undermine confidence in the outcome," or present a *reasonable probability* that the outcome would have been different if not for those acts. *Armstrong v. Kemna*, 590 F.3d 592, 596 (8th Cir. 2010) (quoting *Strickland*, 466 U.S. at 694); *see also Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.") (quoting *Strickland*, 466 U.S. at 693). "[I]n determining the existence *vel non* of prejudice, the court must consider the totality of the evidence before the judge or jury." *Kemna*, 590 F.3d at 596 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

Since a movant must show both deficient performance and prejudice, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006) ("If the defendant cannot prove prejudice, we need not address whether counsel's performance was deficient.") (internal quotation omitted); *Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002) ("Having found [movant's] counsel's performance adequate, we need not address the issue of prejudice under the second prong of the *Strickland* test."). Also, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of

7

trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *see also United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief."); *United States v. Robinson*, 301 F.3d 923, 925 n.3 (8th Cir. 2002) (noting that the Eighth Circuit has rejected the cumulative error doctrine and that "the numerosity of the alleged deficiencies does not demonstrate by itself the necessity for habeas relief"); *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation.").

In this case, movant argues her attorney was ineffective because (1) he never presented evidence of her innocence; (2) he never presented, requested, or reviewed discovery; (3) he insisted she plead guilty; (4) urged her to perjure herself in front of the magistrate judge; and (4) never explained the penalties associated with her guilty pleas. These claims are contradicted by the record.

### 1. **Failure to Defend Movant's Case**

Movant says counsel "never brought forth any evidence for her defense." (CvD 1, p. 2). Movant also states the records shows "her long desire to go forward with a trial. During this time period counsel insisted that she would plea out." (CvD 1, p. 4). This is not true; counsel states he discussed movant's case with the government thoroughly regarding movant's version of events and explanation of the offense conduct (AF ¶ 5) and after discussing the evidence against movant with the

8

government and with movant, counsel presented a plea agreement the government offered to movant. Counsel states, "Had Ms. Ott rejected the proposed plea agreement, I would have presented her defense at a trial of this matter." (AF ¶ 5). Additionally, testimony at the plea hearing contradicts movant's claim that counsel never investigated evidence to prepare a defense.

> The Court: Did you have access to the government's discovery material?
>
> Mr. Weir: Yes, Your Honor.
>
> The Court: And do those materials support the guilty pleas for Counts 1 and 4?
>
> Mr. Weir: They do, Your Honor.
>
> The Court: Were you able to consider and talk with your client – or consider any possible defense or all possible defenses that might apply to these charges and discuss those defenses with your client?
>
> Mr. Weir: I did.

(PTR 32-33).

The court then addressed movant asking if she understood everything discussed during the plea hearing up to this point and movant said under oath that she did. (PTR 33).

Movant also claims counsel "did not file any motions on behalf of Ott . . .." (CvD 1, p. 3). However, movant does not suggest what motions she believes counsel should have filed, rather merely makes the statement. This claim is not supported by the record and fails.

9

### 2. Failure to Request and/or Review Discovery

Simiarly, movant states: "Counsel . . . never asked for discovery," (CvD 1, p. 3) and "no requests to the court for discovery". (CvD 1, p. 10.) This is not true. Counsel states, "A Stipulated Discovery Order was entered in this case on April 4, 2019, by Chief Magistrate Judge Kelly Mahoney." (AF 7). Counsel also states, "I was provided discovery materials by the United States Attorney's Office. Those discovery materials were placed into a three-ring binder and I reviewed the discovery materials personally with Ms. Ott at the O'Brien County Jail." (AF ¶ 7). Moreover, the magistrate judge asked counsel during the plea hearing if he had access to the government's discovery file, and he informed the court that he, in fact, did. (PTR 32).

### 3. Involuntary Plea

Movant claims she was "told by counsel to agree with everything asked and to be silent or the government was going to add other charges that they agreed to dismiss. . .." (CvD 1, p. 5). This claim is not supported by the record, nor does movant provide any evidence to support this claim. Counsel states, "I do not have a specific recollection of the conversation I had with Ms. Ott in court (presumably at the time of her plea), but that is not a statement I would have made in any such situation." (AF ¶ 10).

Movant next claims her plea agreement should be null and voice because "it was engineered and executed as a misleading device intended to defaud the court,

the plaintiff and the public's intrest (sic) in justice. . ..'" (CvD 1, p. 4).   Again, this claim is refuted by the record.   Counsel states, "This allegation is not true.   I personally reviewed the discovery materials in this case and I spoke to Ms. Ott regarding the same and how they related to the elements of the offenses for which she was charged.   I explained to Ms. Ott her trial rights and what would happen at a trial.   I provided Ms. Ott with my professional opinion of her chances of winning a trial of this matter and I discussed with her the possibility that she could face a significantly higher sentence if she were to lose at a trial.   Ms. Ott indicated to me that she would consider a plea offer and I negotiated the best plea offer I could.   Ms. Ott elected to accept that plea offer after in-depth discussions with me."   (AF ¶ 8).

Additionally, during movant's plea hearing, this Court informed movant she did not have to plead guilty.

> The Court: Miss Ott, next I want to make sure you understand your rights.   First, you have already pled not guilty to these charges, and you have the right to plead not guilty and continue in those pleas.   If at the end of the hearing you decide you do not want to plead guilty, please just tell me that, and we'll set your case back on the trial calendar. Do you understand you do have the right to plead not guilty?
>
> The Defendant: Yes, Your Honor.

(PTR 8).   Movant also testified under oath that she was not forced or pressured to enter into a plea agreement with the government.

> The Court: Has anybody forced or pressured you to plead guilty here today?

  The Defendant: No, Your Honor.

  The Court: Has anybody threatened you or your loved ones to get you to plead guilty?

  The Defendant: No, Your Honor.

  The Court: Other than the plea agreement promises and the agreed-upon sentence, has anybody made any promises to you to get you to plead guilty?

  The Defendant: No.

(PTR 32).

### 4. Penalties and Sentencing

Movant claims "Counsel never told Ott she would be "stacked" on time for her agreeing to 924C charge and walked her blindly into a "hanging" receiving a stacked gun charge." (CvD 1, p. 8). This claim is refuted by the record. Counsel states, "This allegation is not true. I spoke at length and on numerous occasions about the fact that Count 1 carried a mandatory minimum term of imprisonment of 5 years and Count 4 carried a mandatory minimum of l0 years of imprisonment and that Counts 1 and 4 would be run (sic) consecutive to one another. The foregoing was detailed in paragraphs 2, 3 and 12.C. of the plea agreement which I discussed with Ms. Ott. Further, the plea agreement was entered pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and the statutory minimum of 180 months was agreed upon by the parties." (AF ¶ 11). The penalties were further detailed in the plea agreement. (PA ¶¶ 2, 3 and 12.C.) Additionally,

movant was informed by this Court of the same.

> The Court: Next I want to talk to you about the penalties and consequences you will face if you plead guilty. So for Count 1, the drug conspiracy, there is a mandatory minimum sentence of at least 5 years, and the maximum sentence is 80 years in prison. In addition to any prison sentence, the judge could order you pay a fine, and the maximum fine is 10 million dollars. After serving any prison sentence, you would be placed on supervised release for at least 8 years, and it could be up to the rest of your life. For Count 4, the use of a firearm in connection with a drug-trafficking crime or crime of violence, there is a mandatory minimum sentence of 10 years. The maximum's life. And that sentence, the prison sentence, has to run consecutive to -- that means back to back with -- whatever sentence you receive on Count 1. The maximum fine for Count 4 is $250,000. And the term of supervised release is up to or not more than 5 years. So when I talk about consecutive or back-to-back sentences, what that means is you'll have to serve all of whatever sentence you receive for Count 1. When you're finished serving that prison sentence, then you would start serving the sentence for Count 4, and it has to be at least a 10-year sentence on Count 4. Do you understand that?

The Defendant: Yes, Your Honor.

(PTR 12-13). This claim is refuted by the record, therefore, it fails.

5. **Actual Innocence**

Movant claims actual innocence stating, "In the plaintiff's plea hearing, she did not admit to a single element of the charged offense." (CvD 1, p. 5). This is refuted by the record.

During the plea hearing, the court set out the elements and asked movant if she understood the elements. Movant testified under oath that she did. (PTR 24-27). The court next reviewed the stipulation of facts contained in the plea

agreement and movant testified under oath that she was guilty of each stipulation of facts. "The Court: Are all of the facts contained in those paragraphs true and correct? The Defendant: Yes, Your Honor." (PTR 28).

Movant also claims she "never claimed to have been in possession of a firearm. . .." (CvD 1, p. 2) and she "never possessed the firearm and was not the one who pulled the almost deadly trigger . . .." ( CvD 1, p. 10). This is not true. Counsel states, "Discovery materials in this case, which included statements of co-defendants and statements made by Ms. Ott to police, indicated that Ms. Ott was in possession, at some point prior to the shooting, of the 9mm handgun that was used in the shooting of this case." (AF 6). Counsel also states "Ms. Ott informed me that she possessed the firearm at issue in this case at some time prior to the shooting. She informed me from whom she obtained the firearm, the location and details of the transaction and how the firearm came to be in possession of her co-defendant, Isaac McDonald. Her statements to me were consistent with one of the statements she made to police and the statement made by her co-defendant, Isaac McDonald." (AF ¶ 9). Movant has not offered any evidence to show she was actually innocent of this conviction.

In fact, she admitted to the offense conduct during the plea hearing.

> The Court: Then, Miss Ott, in the plea agreement there is a stipulation of facts. It's in paragraph 9A which starts on page 3 of the plea agreement, and it goes through paragraph -- it's for several paragraphs, but it ends in paragraph 9DD, and that's D as in David, D as in David on page 8. Did you read each

14

of those paragraphs carefully?

The Defendant: Yes, Your Honor.

The Court: Are all of the facts contained in those paragraphs true and correct?

The Defendant: Yes, Your Honor.

The Court: I'm not going to ask you about every one of these in detail. I'm going to summarize some of it, though. Did you reach an agreement with at least one other person to distribute methamphetamine some time between January of 2018 and March 6 of 2019?

The Defendant: Yes, Your Honor.

The Court: Did at least part of that agreement occur or happen here in the Sioux City area in Iowa?

The Defendant: Yes, Your Honor.

The Court: Did you know the purpose when you -- of the agreement when you joined it was to distribute methamphetamine?

The Defendant: Yes, Your Honor.

The Court: And did you voluntarily and intentionally join into that agreement?

The Defendant: Yes, Your Honor.

The Court: Did anybody force you or pressure you to do it?

The Defendant: No.

The Court: Did you know the conspiracy involved the distribution or an agreement to distribute 50 grams or more of a mixture or substance containing methamphetamine or 5 grams or more of actual pure methamphetamine?

> The Defendant: Yes, Your Honor.
>
> The Court: Were you aware that as part of that conspiracy methamphetamine was weighed and packaged at a location that was within 1,000 feet of Fairmount Park in Sioux City?
>
> The Defendant: Yes, Your Honor.
>
> The Court: As part of that conspiracy, did you or other members of the conspiracy use, carry, brandish, and discharge a firearm on or about August 1 of 2018?
>
> The Defendant: Yes, Your Honor.
>
> The Court: Did that occur here in Sioux City?
>
> The Defendant: Yes.
>
> The Court: And in particular did you know that on that date that Isaac McDonald was carrying a firearm?
>
> The Defendant: Yes, Your Honor.
>
> The Court: Did you know at some point that he actually used or discharged that firearm?
>
> The Defendant: Yes, Your Honor.

(PTR 27-29).

Additionally, the plea agreement itself refutes movant's assertions. Movant agreed to, by initialing paragraphs 1 and 2 of the plea agreement which set out the the charges and penalties applicable. (CrD 90, ¶¶ 1, 2). Additionally, movant admitted and agreed she was guilty of the charges contained in Count 1 and Count 4 by initialing paragraph 5 of the plea

16

agreement which stated:

> 5. At the time the guilty plea is entered, defendant will admit that defendant is guilty of the charges specified in Paragraph 1 of this agreement.

(CrD 90, ¶ 5).

Movant admitted to being guilty of Count 1, conspiracy to distribute a controlled substance (CrD 90 ¶¶ 9A-9F); and Count 4, use of a firearm during and in relations to a drug trafficking crime and a crime of violence (CrD 90 ¶ 9X), by signing paragraphs 9A-F and X, the stipulation of facts contained in the plea agreement. This claim is refuted by the record, therefore it fails.

6. **Failure to Appeal**

Lastly, movant claims her appellate rights were disregarded because "Counsel further failed to speak to the defendant regarding her appeal …". (CvD 1, p. 9). This claim is refuted by the record. In his affidavit, counsel states, "I discussed with Ms. Ott her right to appeal her conviction and sentence at the time we went over the plea agreement and immediately after the sentencing hearing in this matter. I discussed with Ms. Ott that her plea agreement contained an appeal waiver but that she still had a right to file an appeal in this matter within 14 days of judgment being entered in this case. She did not direct me to file an appeal in her case." (AF ¶ 12). Even if counsel had not explained movant's appeal right, this Court, during the plea hearing, explained to movant if she decided to go to trial and was found

17

guilty, she would have the right to appeal. "The Court: If a jury returned a guilty verdict against you, you'd have the right to appeal the conviction and have a lawyer help you with the appeal. Do you understand that as well? The Defendant: Yes, Your Honor." (PTR 11). Additionally, this Court explained the appeal waiver to movant during the plea hearing.

> The Court: There's also an appeal waiver in the plea agreement. It is in a pa – on page 16 in paragraph 29. Do you understand in that paragraph of the plea agreement you're waiving or giving up almost all of your rights to appeal your conviction or sentence in this case and also to file what they call postconviction relief action? Do you understand that?
>
> The Defendant: Yes, Your Honor.
>
> The Court: Did you review that paragraph carefully with your lawyer?
>
> The Defendant: Yes.

(PTR 24). This claim is refuted by the record, therefore, it fails.

The record does not support movant's claims; therefore, they are without merit and fail.

## IV. Movant is not Entitled to an Evidentiary Hearing

"A 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Cardenas-Celestino v. United States*, 552 F. Supp. 2d 962, 968 (W.D. Mo. 2008) (citing *Sanders v. United*

*States*, 341 F.3d 720, 721 (8th Cir. 2003)). In other words, a petitioner is "entitled to a hearing on a 2255 motion 'unless the motion, files, and record conclusively show' that the defendant is not entitled to relief." *United States v. Regenos*, 405 F.3d 691, 694 (8th Cir. 2005) (quoting *Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001)). Review of the motion, files and record conclusively show that defendant is not entitled to relief because there is sufficient evidence to support movant's conviction, therefore, movant is not entitled to an evidentiary hearing, nor is one necessary.

## V. Conclusion

For the above stated reasons, movant's motion is without legal or factual support and should be denied in its entirety without an evidentiary hearing.

Respectfully submitted,

TIMOTHY T. DUAX
Acting United States Attorney

By: /s/Forde Fairchild

FORDE FAIRCHILD
Assistant United States Attorney
600 4th Street, Suite 670
Sioux City, IA 51101
(712) 255-6011
(712) 252-2034 (fax)
Ford.Fairchild@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I mailed a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on June 13, 2022.

UNITED STATES ATTORNEY

BY: Michelle Schwebach

COPIES TO:
Jessica Ott, Reg. No. 17973-029
FMC, Carswell
PO Box 27137
Fort Worth, TX 76127