# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

JESSICA ROSE OTT,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No.  C20-4056-LTS

**MEMORANDUM
OPINION AND ORDER**

## *I.      INTRODUCTION*

This matter is before me on Jessica Rose Ott's motion (Doc. 1) to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 and motion (Doc. 2) for evidentiary hearing.  Ott alleges several ineffective assistance of counsel claims, including that her counsel "never brought forth any evidence of her defense;" "failed to attempt to investigate any of the overwhelming evidence that would have proven her actual innocence of the violent crime or gun charges;" "did not file any motions on behalf of Ott;" "never asked for discovery" or an investigator; "made no attempts to prepare himself or his client for trial;" told Ott to "agree with everything asked" and otherwise be silent at her plea hearing; "never told Ott she would be 'stacked' on time for agreeing to 924c charge" and "failed to speak to the defendant regarding her appeal."  Ott also alleges that she told her counsel she had not been in possession of the firearm and counsel nonetheless advised her to enter into a plea agreement and plead guilty.  She contends her plea agreement was not voluntary because she did not understand the law or facts and the plea should otherwise be vacated because she did not admit to a single element of the charged offenses.  Doc. 1.

On initial review, I directed Ott's trial counsel, Joshua Weir, and the Government to respond to Ott's claims.  Weir filed an affidavit (Doc. 4), Ott filed a reply (Doc. 9)

and the Government filed a response (Doc. 10). I find that an evidentiary hearing is not required.

## II. BACKGROUND

On March 19, 2019, the grand jury returned an indictment (Crim. Doc. 5) charging Ott with one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 and 860 (Count 1); one count of conspiracy to tamper with a witness in violation of 18 U.S.C. § 1512(k) (Count 2); one count of tampering with a witness in violation of 18 U.S.C. §§ 2, 1512(a)(1)(C) (Count 3) and one count of use of a firearm during and in relation to a drug trafficking crime and a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c).[1] The court appointed Weir to represent Ott.

On July 23, 2019, Ott appeared before Chief United States Magistrate Judge Kelly K.E. Mahoney and pleaded guilty to Counts 1 and 4 of the superseding indictment pursuant to a written plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Crim. Docs. 85, 87, 90. The agreement provided that Ott would be sentenced to a term of imprisonment of 180 months and eight years supervised release. Crim. Docs. 87 at 3, 90 at 9. I accepted the parties' plea agreement and sentenced Ott to 60 months on Count 1 and 120 months on Count 4 to be served consecutively and eight years of supervised release. Crim. Doc. 142. Ott did not file an appeal.

## III. LEGAL STANDARD

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To obtain relief, a federal prisoner must establish:

---

[1] The grand jury returned a superseding indictment on April 24, 2019, charging Ott with the same counts, but adding a codefendant. *See* Doc. 30.

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the judgment or sentence] is otherwise subject to collateral attack.

*Id.*; *see also* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required to "vacate and set the judgment aside and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (citation omitted). Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (citation omitted). Rather:

> Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Sun Bear*, 644 F.3d at 704 ("[T]he permissible scope of a § 2255 collateral attack . . . is severely limited[.]"). A collateral challenge under § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (citation omitted).

To establish a claim for ineffective assistance of counsel, Ott must prove that her attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), that is conduct that fails to conform

to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. "The Sixth Amendment right to effective assistance of counsel includes representation during the plea bargaining process." *Mayfield v. United States*, 955 F.3d 707, 711 (8th Cir. 2020) (citing *Missouri v. Frye*, 566 U.S. 134, 143–47 (2012)). Thus, the two-part *Strickland* test applies to ineffective assistance of counsel claims regarding guilty pleas. *Frye*, 566 U.S. at 140.

Since *Strickland* requires proving both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *Williams v. United States*, 452 F.3d 1009, 1012 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006).

The first *Strickland* standard asks whether an attorney's performance "fell below an objective standard of reasonableness." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688). The Eighth Circuit determines reasonableness by considering "counsel's performance objectively and gauging whether it was reasonable under prevailing professional norms and considering all the circumstances." *Mayfield v. United States*, 955 F.3d 707, 710 (8th Cir. 2020) (cleaned up). When evaluating the reasonableness of counsel's decisions, "there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 710-11 (cleaned up).

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable,"

likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[t]his standard is less onerous than the preponderance-of-the-evidence standard." *Donelson v. Steele*, 16 F.4th 559, 570 (8th Cir. 2021). Even so, "the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case." *Dorsey v. Vandergriff*, 30 F.4th 752, 757 (8th Cir. 2022) (quoting *Harrington*, 562 U.S. at 111-12) (internal citation omitted). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

"Evidentiary hearings on [§ 2255] motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition *if a factual dispute exists*." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (emphasis added). "The district court is not permitted to make a credibility determination on the affidavits alone." *Id.* at 1206; *see also United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("[The] district court abused its discretion when it credited the attorney's affidavit over the petitioners without first holding an evidentiary hearing."). However, no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *See New v. United States*, 652 F.3d 949, 954 (8th Cir. 2011) (citation omitted).

## IV.    DISCUSSION

### A.    Counsel's Pretrial Actions

Ott argues that her counsel, Weir, failed to put forth any evidence of her defense, conduct any investigation to prove her actual innocence, file motions, ask for discovery, hire an investigator or prepare for trial. Weir states in his affidavit that he spoke at length with the Government regarding Ott's version of events and her explanation of the charged conduct. Doc. 4 at 1. With regard to any investigation or discovery, Weir states that the Government provided discovery materials pursuant to the stipulated discovery order

5

(Crim. Doc. 21) and that he reviewed these materials with Ott at the O'Brien County Jail. *Id.* at 2. That discovery included statements of co-defendants and statements by Ott to police that she was in possession, at some point prior to a shooting, of the 9mm handgun that was used in the shooting. *Id.* While Ott asserts that she was not in possession of the firearm, *see* Doc. 1 at 5, Weir states that Ott informed him that she had possessed the firearm at some time prior to the shooting. Doc. 4 at 2. Specifically, he states that she informed him from whom she obtained the firearm, the location and details of the transaction and how her co-defendant came to possess the firearm. *Id.* Weir notes these statements were consistent with one of the statements Ott made to police as well as the statement made by her co-defendant. *Id.*

The Government notes that Weir also represented at the plea hearing that he had access to the Government's discovery material and that those materials supported Ott's guilty pleas to Counts 1 and 4. Crim. Doc. 226 at 32-33. Weir also confirmed that he considered all possible defenses to those charges and discussed them with Ott. *Id.* Ott also confirmed that she understood everything discussed during the plea hearing. *Id.*

Generally, "[t]rial counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary." *Kemp v. Kelley*, 924 F.3d 489, 500 (8th Cir. 2019). The question is whether "trial counsel was unreasonable in not exploring an alleged defense." *United States v. Vazquez-Garcia*, 211 F. App'x 544, 545 (8th Cir. 2007). "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). However, "'strategic choices made after less than complete investigation are reasonable' only to the extent that 'reasonable professional judgments support the limitations on investigation.'" *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (quoting *Strickland*, 466 U.S. at 690-91). "Counsel does not render ineffective assistance by failing to make frivolous arguments." *Strickland*, 466 U.S. at 689.

Ott's claim of ineffective assistance of counsel based on various alleged inactions by Weir does not establish that his performance fell below an objective standard of reasonableness, or that the outcome of her case would have been different had Weir undertaken the alleged actions. First, Ott does not identify the type of evidence she believes Weir should have investigated or what type of motion he should have filed. She also does not explain how any investigation or motion would have altered the outcome of her case. To the extent her complaints are based on her assertions that she never possessed the firearm, these assertions contradict statements she made to Weir, to the police, in her plea agreement and during her plea hearing. Doc. 4 at 2; Crim. Docs. 90 at 7-8; 226 at 29. 35-36.

Second, with regard to discovery, a stipulated discovery order was entered in the case and Weir states he reviewed the discovery personally with Ott. *Id.* Ott does not identify any other discovery Weir should have requested. Finally, with regard to any trial preparation, Weir states that he explained Ott's trial rights to her and what would happen at trial. *Id.* He also provided Ott with his professional opinion of her chances of winning at trial and discussed with her the possibility that she could face a significantly higher sentence if she were to lose at trial. *Id.* At that time, Ott indicated to Weir that she would consider a plea offer. After in-depth discussions with Ott regarding the plea offer negotiated by Weir, she agreed to accept it. *Id.* At her plea hearing, Judge Mahoney asked if Ott was generally satisfied with Weir's representation and she responded, "Absolutely, Your Honor." Doc. 226 at 9. Ott also indicated she understood her trial rights and had a chance to review her plea agreement and fully discuss it with Weir. *Id.* at 8-12; 19-20. Judge Mahoney reviewed the elements of Counts 1 and 4 and Ott indicated she understood them. Ott also agreed to the stipulation of facts. *Id.* at 27-30.

Based on the totality of the circumstances, Ott has not come close to demonstrating that Weir's performance fell below an objective standard of reasonableness or that the outcome of her case would have been different based on any additional discovery,

7

investigation, motion practice or preparation.  This claim of ineffective assistance of counsel fails.

**B.     *Guilty Plea***

With regard to her guilty plea, Ott claims Weir advised her to enter into a plea agreement and suggests that she was misled into doing so.  Doc. 1 at 5-6.  She argues that despite her desire to go to trial, Weir insisted that "she would plea out."  *Id.* at 4.  Additionally, Ott alleges that Weir told her to agree with everything asked during the plea hearing and to be silent or the Government would back out of its agreement to dismiss certain charges.  Ott contends that during the plea hearing, she did not admit to a single element of the charged offense.  She contends her plea was not truly voluntary because she did not understand the law or facts.  *Id.* at 8.

In his affidavit, Weir denies that he insisted Ott enter into a guilty plea.  As noted above, he states he reviewed the discovery materials with Ott and how they related to the elements of the charged offenses.  Doc. 4 at 2.  He also explained her trial rights and what would happen at a trial.  He gave his professional opinion of her chances of winning at trial and discussed the possibility of a significantly higher sentence if she lost at trial. *Id.*  Because Ott indicated that she would consider a plea offer, Weir negotiated the best plea offer he could, discussed it with Ott, and Ott agreed to accept it.  *Id.*  With regard to the plea hearing, Weir denies that he told Ott to agree with everything asked and otherwise be silent or the Government would add in the charges it had agreed to dismiss. Weir states he does not have a specific recollection of the conversation he had with Ott in court, but states that is not a statement he would have made in any such situation.  *Id.*

"The Sixth Amendment right to effective assistance of counsel includes representation during the plea bargaining process."  *Mayfield v. United States*, 955 F.3d 707, 712 (8th Cir. 2020) (citing *Missouri v. Frye*, 566 U.S. 134, 143-47 (2012)).  The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Therefore, Ott must

show that Weir's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 57. In the plea context, the movant must show "there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," which "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quotations omitted).

Whether there is a reasonable probability is a fact-dependent question that requires consideration of any "contemporaneous evidence to substantiate [the] defendant's expressed preferences." *Mayfield*, 955 F.3d at 712 (quoting *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (internal quotation marks omitted)). "A defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017); *see also United States v. Miley*, 119 F. App'x 330, 332 (2d Cir. 2005) (concluding any prejudice from any misrepresentations by defense counsel about the consequences of a guilty plea was dispelled by the time the defendant pleaded guilty based on the court's colloquy during the plea hearing); *United States v. Lemaster*, 403 F.3d 215, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

Ott's assertions are refuted by the record. With regard to her allegations that she was misled into pleading guilty such that her plea was involuntary, Judge Mahoney informed Ott:

> First, you have already pled not guilty to these charges, and have the right to plead not guilty and continue in those pleas. If at the end of the hearing

you decide you do not want to plead guilty, please just tell me that, and we'll set your case back on the trial calendar.

Crim. Doc. 226 at 8. Ott stated she understood. Judge Mahoney also informed Ott of all her trial rights, which Ott stated she understood. *Id.* at 8-12. After going through her rights and the penalties and consequences she would face if she pleaded guilty, Judge Mahoney asked Ott if she had any questions for her lawyer and Ott indicated she did not. *Id.* at 17.

Ott agreed she had the opportunity to review the plea agreement carefully with her lawyer, understood its terms and did not have any questions. *Id.* at 19-20. After discussing the plea agreement in-depth, Judge Mahoney asked Ott if anyone had forced or pressured her to plead guilty, threatened her or her loved ones to get her to plead guilty or made any promises to her to get her to plead guilty. *Id.* at 32. Ott answered each of these questions in the negative. *Id.* Before asking for her formal plea, Judge Mahoney asked once again if Ott understood her rights, the terms of the plea agreement and the rights she would lose if she pleaded guilty. Ott stated she understood and had no questions before she entered her guilty plea. *Id.* at 33-34.

With regard to the elements of the charged offenses, Judge Mahoney discussed each element and Ott confirmed she understood the elements. *Id.* at 25-27. Judge Mahoney then discussed the stipulation of facts in the plea agreement and Ott confirmed under oath that she had read each paragraph carefully and that all of the facts contained within those paragraphs was true and correct. *Id.* at 27-28. Specifically, Ott agreed she had reached an agreement with at least one other person to distribute methamphetamine between January 2018 and March 2019, that at least part of that agreement happened in the Sioux City, Iowa, area, that she knew the purpose of the agreement was to distribute methamphetamine when she joined the agreement, that she voluntarily and intentionally joined the agreement, that the conspiracy involved the distribution or an agreement to distribute 50 grams or more of a mixture or substance containing methamphetamine or 5 grams or more of actual pure methamphetamine and that as part of the conspiracy,

methamphetamine was weighed and packaged at a location that was within 1,000 feet of Fairmount Park. *Id.* at 28-29. Ott also agreed that as part of the conspiracy, she or other members of the conspiracy used, carried, brandished and discharged a firearm on or about August 1, 2018, in Sioux City and that she knew Isaac McDonald was carrying a firearm on that date and that he actually used or discharged that firearm. *Id.* Ott stated she understood all the terms of the plea agreement, the rights she would be giving up if she pleaded guilty and that she did not have any questions. *Id.* at 34. She pleaded guilty to Counts 1 and 4.

Ott's current allegations as to this ineffective assistance of counsel claim contradict her prior sworn statements. She is unable to demonstrate prejudice from any alleged statements made by Weir concerning her decision to plead guilty or her alleged misunderstanding or lack of understanding as to her guilty plea such that it was not voluntary. Judge Mahoney advised Ott of her right to go to trial and asked if she had been pressured in any way to plead guilty. Ott stated she understood her rights and that no one had pressured her. Judge Mahoney also covered the terms of the plea agreement, including the factual basis and all elements of each offense to which Ott admitted. This claim of ineffective assistance of counsel fails.

## C.     *Potential Penalties for § 924(c) Charge*

Ott argues Weir did not tell her she would be "stacked" on time for pleading guilty to the § 924(c) charge and walked her blindly into a "hanging" receiving a stacked gun charge. Weir states this allegation is not true and that he spoke at length on numerous occasions with Ott that Count 1 carried a mandatory minimum term of imprisonment of 5 years and Count 4 carried a mandatory minimum of 10 years and that they would run consecutive to one another. Doc. 4 at 3. He also notes this was detailed in paragraphs 2, 3 and 12.C. of the plea agreement which Weir discussed with Ott. *Id.* Further, Weir notes that the agreement was entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) such that the parties agreed upon the statutory minimum of 180 months. *Id.*

Ott's allegations that she did not understand that time would be "stacked" are, like many of her other contentions, directly refuted by the record. During the plea hearing, Judge Mahoney covered penalties and consequences of pleading guilty, noting for Count 1 there was a mandatory minimum sentence of at least five years with a maximum sentence of 80 years in prison. Doc. 226 at 12. For Count 4, she noted there was a mandatory minimum sentence of 10 years and a maximum of life. *Id.* She specifically stated that the prison sentence for Count 4 "has to run consecutive to – that means back to back with – whatever sentence you receive on Count 1." *Id.* She added:

> So when I talk about consecutive or back-to-back sentences, what that means is you'll have to serve all of whatever sentence you receive for Count 1. When you're finished serving that prison sentence, then you would start serving the sentence for Count 4, and it has to be at least a 10-year sentence on Count 4.

*Id.* at 13. Ott stated under oath that she understood. Later in the hearing, Judge Mahoney covered the sentencing provisions of the plea agreement. Specifically, she noted that the plea agreement was entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(c) and stated:

> What that means is you and the government have agreed to a specific sentence. And if the judge accepts the plea agreement, the judge has to give you this sentence. The agreed-upon sentence is 180 months in prison followed by 8 years of supervised release and the $200 special assessment the judge is required to order.

*Id.* at 21. Ott stated she understood. Judge Mahoney then explained that if the judge rejected the plea agreement, she could withdraw her guilty plea. *Id.* at 22. If Ott decided not to withdraw her plea, she could be sentenced under the guidelines and, again, Judge Mahoney stated: "There's an acknowledgment that Count 4 has a consecutive sentence of 10 years that has to run consecutive to Count 1." *Id.*

Based on Ott's sworn statements from her plea colloquy, I find that she is unable to demonstrate prejudice from any alleged lack of information from counsel regarding the length of her potential sentence. At two different points during the plea hearing,

Judge Mahoney explained the consecutive nature of the sentences for the two counts. At one point, she informed Ott of the mandatory minimum sentences on each and at another point, she covered that Ott and the Government had agreed to a 180-month sentence. Ott confirmed that she understood each time Judge Mahoney discussed her potential sentence, which was the mandatory minimum Ott could receive for these two counts under the law. *Id.* at 13, 21. This claim of ineffective assistance of counsel fails.

### D. Appeal

Ott does not claim that she directed Weir to file an appeal but he failed to do so. Instead, she alleges that Weir failed to speak to her regarding her appeal. Weir states this is not true and that he discussed with Ott her right to appeal her conviction and sentence at the time they reviewed the plea agreement and immediately after the sentencing hearing. Doc. 4 at 3. He told Ott that her plea agreement contained an appeal waiver but that she still had a right to file an appeal within 14 days of judgment being entered. He states she did not direct him to file an appeal. *Id.*

Again, Ott's allegations are flatly contradicted by the record. During her plea hearing, Judge Mahoney explained:

> There's also an appeal waiver in the plea agreement. It is . . . on page 16 in paragraph 29. Do you understand in that paragraph of the plea agreement you're waiving or giving up almost all of your rights to appeal your conviction or sentence in this case and also to file what they call postconviction relief action? Do you understand that?

Crim. Doc. 226 at 24. Ott stated she understood and that she had reviewed that paragraph carefully with her lawyer. *Id.* At sentencing, I also informed Ott of her appeal waiver, noting that, for the most part, she had given up her right to appeal but that some exceptions did exist. I advised that if she wanted to file an appeal, she had to do so within 14 days from when I entered the judgment and that she was entitled to representation by counsel for any appeal.

Based on the record, I find that Ott was aware of her appeal rights and has not demonstrated any prejudice from counsel's alleged failure to speak further with her regarding an appeal. Thus, she has also failed to demonstrate deficient performance. This claim of ineffective assistance of counsel fails.

## V.    CERTIFICATE OF APPEALABILITY

In a § 2255 proceeding before a district judge, the final order is subject to review by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

14

Having thoroughly reviewed the record in this case, I find that Ott failed to make the requisite "substantial showing" with respect to any of the claims raised in her § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Thus, a certificate of appealability will not issue. If she desires further review of her § 2255 motion, Ott may request issuance of the certificate of appealability by a judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## VI. CONCLUSION

For the reasons stated herein, Ott's motion (Doc. 1) for relief under 28 U.S.C. § 2255 is **denied** as to all claims, as is her motion (Doc. 2) for evidentiary hearing. This action is **dismissed with prejudice**. A certificate of appealability shall not issue.

**IT IS SO ORDERED.**

**DATED** this 15th day of December, 2023.

_____
Leonard T. Strand, Chief Judge

15